Beth Creighton, OSB #972440
E-mail: *beth@civilrightspdx.com*
Michael E. Rose, OSB #753221
E-mail: *mrose@civilrightspdx.com*
CREIGHTON & ROSE, PC
300 Powers Building
65 S.W. Yamhill Street
Portland, Oregon 97204
Phone: (503) 221-1792
Fax:   (503) 223-1516

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **DYLAN BLANKS,** | Case No. 6:17-cv-01578 |
| Plaintiff, | **COMPLAINT** |
| vs. | (Civil Rights - 42 USC § 1983 - First Amendment, Fourteenth Amendment, 42 USC § 1981, 42 USC § 2000e-2 and ORS 659A.030, ORS 659A.199; ORS 659A.203) |
| **UNIVERSITY OF OREGON, LORETTA CANTWELL and LEANN GUTIERREZ, in their individual capacities and their official capacities,** | |
| Defendants. | *JURY TRIAL REQUESTED* |

**I.**

**INTRODUCTION**

1.     Pursuant to 42 USC § 1983, Plaintiff alleges the deprivation of rights guaranteed to her by the First and Fourteenth Amendments to the United States Constitution, the right not to be discriminated against because of her race pursuant to ORS 659A.030 and 42 USC §1981, and the right not to be retaliated against or discriminated against for reporting a violation of state or federal law, rule or regulation. She seeks declaratory relief, equitable relief, damages, attorneys' fees and litigation expenses/costs, including expert witness fees and expenses.

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

## II.

## JURISDICTION

2. This court has jurisdiction by virtue of 28 USC § 1343, 28 USC § 1331, and 28 USC § 1367. Venue is proper in this district pursuant to 28 USC §§ 1391 (b) and 1391 (e). Defendants are located in Lane County, Oregon, and the events underlying this Complaint took place there, making venue proper in the District of Oregon, Eugene Division.

## III.

## PARTIES

3. At all times material herein, Plaintiff Dylan Blanks (hereafter "plaintiff"), is the lead registered nurse in the Nurse Specialty Clinic at the University of Oregon (herein "UO") and one of the few African-American employees in the UO's Health Center (herein "UOHC"). At all times material herein, she resided and worked in Lane County, State of Oregon.

4. Loretta Cantwell is a resident of the State of Oregon. At all times material herein, she was the Director of Nursing for the UOHC. She is sued in her individual capacity and official capacity.

5. LeAnn Gutierrez is a resident of the State of Oregon. At all times material herein, she was the Director for the UOHC. She is sued in her individual capacity and official capacity.

6. Dylan Blanks is a Registered Nurse, with a nursing degree from Lane Community College obtained in 2000 and a BA degree in Healthcare Administration from Northwest Christian University, where she graduated with honors in 2006. Her professional career includes being a hospital staff nurse, an admissions marketing coordinator, a discharge planner, a contract nurse for the State of Oregon and nursing in the fields of pediatrics, allergy and asthma and internal medicine. In 2015, Blanks was awarded the Outstanding Classified Employee Recognition Award in part for her exceptional handling of the 2015 campus-wide meningitis outbreak.

7. The University of Oregon Health Center's mission is to provide exceptional

PAGE 2 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

culturally competent health services and public health leadership that enhances personal success and optimizes health and wellness for a diverse campus community. Helping students stay healthy is one of their top priories, knowing that wellness contributes to academic and personal success. As a facility that provides health care, UOHC is required to comply with all state and federal laws governing the health care industry.

8. The UO purports to "value our diversity and seek to foster equity and inclusion in a welcoming, safe, and respectful community," "affirms the principles of equality of opportunity and freedom from unfair discrimination for all members of the university community and an acceptance of true diversity as an affirmation of individual identity within a welcoming community," and pledges, "we should constantly work to make ourselves more adept at understanding how race, ethnicity, national origin or citizenship, gender, religious affiliation or background, sexual orientation, gender identity, economic class or status, political affiliation or belief, and ability or disability affect the way we live and learn, so that we are better able to respond to intolerance and prejudice, which violate our purpose and mission."[1]

9. On April 17, 2007, UO hired Dylan Blanks as a Registered Nurse. She initially enjoyed a successful career at UOHC and was promoted in September 2010 to RN2 Lead Nurse. As part of her job duties she monitors the Digital Data Loggers ("DDL") for the vaccine refrigerators for compliance with CDC requirements and Vaccine for Children ("VFC") requirements.

10. Loretta Cantwell became interim Director of Nursing at UOHC in September 2015.

11. LeAnn Gutierrez became the executive director at UOHC in 2016. She claims to be "passionate about quality, accessible and affordable care, and diversity with a commitment to

---

[1] http://inclusion.uoregon.edu/diversity-uo (last accessed 9/23/17).

PAGE 3 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

providing a superior level of service"[2]  During her interview, she indicated that if selected, she plans to create a supportive learning environment at the UOHC and have leadership that "actively listens to staff and has a willingness to consider alternate viewpoints."[3]

12.  UOHC is subject to the laws and regulations governing the safe storage of vaccines compliance in accordance with the CDC and VFC requirements.

13.  UOHC personnel is subject to ORS 433.101(1) which states, "[n]o person shall willfully cause the spread of any communicable disease within this state."

14.  UOHC personnel is subject to ORS 433.110, which states, "[e]very physician, physician assistant or nurse attending a person affected with any communicable disease shall use all precautionary measures to prevent the spread of the disease as the Oregon Health Authority may prescribe by rule."

15.  The CDC states:

"[f]ailure to adhere to recommended specifications for storage and handling of immunobiologics can reduce or destroy their potency, resulting in inadequate or no immune response in the recipient. Recommendations in the product package inserts, including methods for reconstitution of the vaccine, should be followed carefully. Maintenance of vaccine quality is the shared responsibility of all handlers of vaccines from the time a vaccine is manufactured until administration. All vaccines should be inspected on delivery and monitored during storage to ensure that the recommended storage temperatures are maintained. Vaccines should continue to be stored at recommended temperatures immediately upon receipt until use. Inadequate vaccine storage also can result in significant costs to replace vaccine inventory."[4]

16.  The CDC states:

"An out-of-range temperature reading should prompt immediate action. A plan should be developed ahead of time to address various types of emergencies that might require removal of vaccine from the original storage unit. Transfer of vaccines to a predesignated alternative emergency storage site might be necessary

---

[2] https://health.uoregon.edu/person/leann-gutierrez (last accessed 9/23/17).

[3] https://www.dailyemerald.com/2016/01/26/executive-director-candidate-aims-to-improve-health-centers-culture-of-excellence/ (last accessed 9/23/17).

[4] https://www.cdc.gov/vaccines/hcp/acip-recs/general-recs/storage.html (last accessed 9/23/17).

PAGE 4 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

if a temperature problem cannot be resolved immediately (e.g., plugging in an unplugged unit or closing a door that has been left open). It is critical to avoid freezing vaccine during transport (improperly packing vaccine with ice can damage vaccines). Vaccine should be marked "do not use" and moved to the alternate site after verifying that the alternate unit is at the proper temperature. Determinations of vaccine viability in practice include consideration of both time and magnitude of temperature excursions and should be made in consultation with state/local public health departments or the vaccine manufacturer, as one or both of these groups may have additional information based on a broad international perspective. Damage to the immunogenicity of a vaccine exposed to temperatures outside of the recommended range might not be apparent visually. As a general rule, vaccines that have been stored at inappropriate temperatures should not be administered unless public health authorities or the manufacturer determine it is safe and effective to do so. If such vaccines already have been administered, vaccine exposed to inappropriate temperatures that is inadvertently administered should generally be repeated."

17. Defendant UO receives federal funding which requires compliance with the CDC guidelines.

18. Soon after she was permanently appointed to the Director of Nursing position, Defendant Cantwell began terminating staff or otherwise driving them out and hiring her friends and associates to fill the clinic positions.

19. In the Fall of 2016, Defendant Cantwell scheduled meetings every Wednesday between 3:45 PM and 4:00 PM. She claimed the purpose of these meetings was to have Blanks show her that none of the refrigerators were out compliance with the recommended temperature range. Defendant Cantwell lead this parade in a very exaggerated and demeaning way, calling everyone's attention to this task, but then not even looking at the logs as they were being pointed out to her. There was no reason why Defendant Cantwell could not have inspected these logs on her own without the public fanfare.

20. On or about October 6, 2016, Blanks was packing up flu vaccines for an off-site clinic. She explained the process for monitoring the temperature of the vaccinations to the nurse that would be administering the flu vaccines. Since he did not appear to understand what was being explained to him, Blanks informed Defendant Cantwell that she did not feel comfortable having this nurse in charge of such a crucial function.

PAGE 5 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

21. Blanks asked Defendant Cantwell to check the vaccine temperature upon her arrival in the morning and before the vaccines were taken to the off-site location. Defendant Cantwell agreed.

22. Despite her agreement, Defendant Cantwell did not check the temperature of the vaccines the next morning and was not present when the vaccines were taken off site.

23. By 8:30 AM, the vaccines had exceeded the temperature range for safe storage of the vaccines.

24. Blanks brought the non-compliance to Defendant Cantwell's attention. Defendant Cantwell claimed that the nurse had taken all the vaccines out of the container, yet no disciplinary action resulted from this incident.

25. On October 11, 2016, during a joint nursing meeting, Blanks asked a question about whether an email could be sent to the Electronic Medical Records team to inform them of the problems with the charting of the tuberculosis skin tests (a problem to which Blanks had been trying to get a solution from Defendant Cantwell for approximately six weeks). Defendant Cantwell was extremely rude and dismissive of Blanks' concerns and chastised her for bringing up the issue.

26. Later that day Blanks addressed Defendant Cantwell, telling her that she felt she was being harassed by Cantwell and asking what she needed to do to make it stop. Defendant Cantwell just stared at her with a smile on her face. Blanks asked again. Defendant Cantwell remained silent and smiled even bigger. Defendant Cantwell finally said "I'm sorry you feel that way," walked away and continued smiling like the cat that ate the canary.

27. The following day Defendant Cantwell increased her scrutiny and supervision of Blanks notifying her that she was requiring additional weekly one-on-one meetings with Cantwell.

28. On October 17, 2016, at the Rec Center flu clinic, the flu vaccinations were out of temperature compliance for just about the entire clinic. Once again, no students were notified

PAGE 6 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

that their vaccinations were potentially impotent. And once again, no disciplinary action resulted from this incident.

29. Ms. Blanks was out sick on October 17, 2016, and Defendant Cantwell falsely tried to blame another nurse for the incident.

30. On or about October 21, 2016, Blanks sent Defendant Cantwell an email suggesting that someone come in and check the temperature on the refrigerator over the weekend, since the tech worker who had checked the refrigerator reset the set point on the refrigerator.

31. At a meeting later that day, Blanks informed the Medical Director, Dr. Brunader, that the flu vaccines for the October 17, 2016, flu clinic had been out of the required temperature range.

32. Thereafter, Defendant Cantwell did not fill out the Vaccine Trouble-Shooting Sheet on this incident for over a week, only after Blanks notified Dr. Brunader of the incident and only after a second incident occurred with flu vaccinations being out of range. Based on information and belief, Defendant Cantwell falsified this report. Defendant Cantwell also failed to contact the State or the vaccine manufacturer, or the proper UOHC authorities, including Dr. Brunader and Defendant Gutierrez, or to inform the recipients of the vaccines, that the vaccines were potentially impotent.

33. On Monday, October 24, 2016, Blanks checked the temperature and noted that no one had logged the temperature over the weekend. Defendant Cantwell indicated via email that she had checked the temperature on Saturday and did not log it in. Based upon information and belief, this was a false statement.

34. On October 26, 2016, Blanks again packaged up the vaccines for the following day's off-site flu shot clinic. Blanks sent Dr. Brunader and Defendant Cantwell a email message that night, telling them that she was concerned that the vaccine she was packaging might possibly freeze because of what had happened in the past when vaccine had to be packaged

PAGE 7 – COMPLAINT

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

overnight for delivery the next morning. Defendant Cantwell never replied to Blanks' email. Because Blanks feared that the vaccines would freeze, she did not put the top layer of frozen water bottles on top of the vaccines in the box. Unfortunately, the vaccines still fell below the recommended temperature and the clinic was unable to use the flu vaccines for the clinic as a result. Instead of reviewing the packing protocol to prevent further mishaps, Defendant Cantwell immediately blamed Blanks and subjected her to disciplinary action.

35. The following day, Defendant Cantwell requested Blanks go with her to her office. Blanks did not want to go because she did not want to be written up without union representation and told Cantwell. Defendant Cantwell told Blanks that the meeting was not about disciplinary action. When Blanks reluctantly followed her into the office, she was presented with a document of "expectations" that ended with a phrase threatening termination, if these expectations were not met.

36. After Blanks realized that Defendant Cantwell had lied to her, Blanks walked out of the meeting. Defendant Gutierrez called Blanks into Defendant Cantwell's office. During the second meeting, Blanks complained to Defendant Gutierrez about Defendant Cantwell misrepresenting the events that occurred earlier that day. Defendant Cantwell started again to speak and make further misrepresentations. Blanks, sitting across the room, told her to "stop lying" and held her hand up in a "stop" motion. Defendant Cantwell became even more agitated and told Blanks to "get [her] hand out of my face!" Blanks was across the room from Defendant Cantwell, and her hand was several yards away, and nowhere near her face.

37. After the meeting, Blanks requested to have a one on one meeting with Defendant Gutierrez. In this meeting, Blanks told her about Defendant Cantwell's harassment and terrible treatment of Blanks. Gutierrez responded that she could not do anything to stop it because Blanks had filed a complaint with the EEO office.

38. Blanks told her that she felt Defendant Cantwell was offended by her use of hand gestures when she talked and that in many other cultures, people use their hands to talk much

PAGE 8 – COMPLAINT

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

more than they do in mainstream American culture and suggested that there be a training at the clinic on diverse ways of communication.

39.     On or around December 8, 2016, Blanks met with Defendant Gutierrez and spent about two hours relaying how Defendant Cantwell treated her.  Blanks, not Cantwell, was put on administrative leave while an investigation was initiated into her allegations.

40.     Defendant Cantwell told others that Ms. Blanks was put on administrative leave because she "played the race card" and her comments were inappropriate and unprofessional.

41.     Defendant Cantwell has engaged in other conduct creating a hostile work environment for Blanks after Blanks reported Defendant Cantwell's non-compliance with the temperature protocol for the vaccines.  Such conduct includes, but is not limited to the following:

a) monitoring Blanks' calls;

b) addressing Blanks in a rude/curt manner;

c) consistently micro-monitoring Blanks' actions;

d) slowly taking away her responsibilities (such as not involving her in hiring of nurses or permitting her to participate on the search committee, excluding her from new electronic medical records system meetings);

e) responding to her in a cold, accusatory, and suspicious manner;

f) consistently trying to find fault with her performance;

g) putting additional expectations on her;

h) consistently questioning what she did and why;

i) interfering with her job, causing her to feel like she has to ask Cantwell before she can do anything at all due to changing expectations;

j) taking away her independent, autonomous decision-making job duties;

k) disparately disciplining her;

l) subjecting her to heightened and disparate expectations; and

m) transferring her lead duties and responsibilities to her RN1 subordinate nurses,

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

including a new nurse that had been employed less than six months.

42. In the Fall of 2016, Blanks lodged a complaint with UO's Affirmative Action and Equal Opportunity Office about Defendant Cantwell's disparate treatment and creation of a hostile work environment based on race.

43. On or about January 18, 2017, Blanks filed a complaint against Defendant Cantwell with the Board of Nursing, regarding the October 17, 2016, vaccine incidents and Defendant Cantwell's falsification of the temperature records.

44. On or about April 3, 2017, Defendant UO received a tort claim notice from Blanks regarding the allegations in this complaint.

45. In May of 2017, Blanks requested supplies amounting to approximately $30 to assist with her duties in the UOHC. Defendant Cantwell questioned her extensively about why she needed the supplies and what she was using the supplies for. No other prior supply request was confronted with such scrutiny.

46. In June and July of 2017, Defendant Cantwell organized meetings or caused meetings to be organized regarding planning for a vaccine clinic for international students. Defendant Cantwell did not invite Blanks to these meetings despite the fact that she was the vaccination coordinator and every year before that, Blanks had been an integral part of the vaccination clinic for the international students. In Blanks' place, Defendant Cantwell requested another nurse speak on behalf of vaccine transport and management. That nurse was not authorized to order, transport, or maintain the vaccines.

47. Early September 2017, Defendant Cantwell began the process to change the Depovera Injections templates which Blanks had created and sought out the opinions of other nurses. Defendant Cantwell did not ask Blanks for her opinion even though she is the person at UOHC responsible for injections, consulting instead with a RN1 subordinate nurse.

48. On or about June 10, 2017, Defendant Gutierrez told Blanks and another employee of color that they were *required* to take a photo and put their photos on the UOHC

PAGE 10 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

website and on display in the reception area of the UOHC in order for them to pass accreditation. Defendant Gutierrez told Blanks that if she did not get her photo taken, Gutierrez would put a copy of her nursing license in the reception area where the other employees' photos were displayed.

49.     On or about June 16, 2017, Defendant UO concluded the investigation into Blank's Affirmative Action and Equal Opportunity complaint.  UO issued findings on or around June 22, 2017, finding "by a preponderance of evidence Ms. Cantwell treated [Blanks] differently than others in a number of ways, and that race was more likely than not at least a factor in her treatment of [Blanks]."  The investigation results also found "that a preponderance of evidence established that Ms. Cantwell engaged in conduct toward [Blanks] that was at least in part based on [Blanks'] race, was unwelcome and sufficiently pervasive that it created an intimidating and hostile working environment for [Blanks] and interfered with [Blanks'] work."

50.     After the findings were made as in the above paragraph, UO had Blanks report to Dr. Brunader, but allowed Defendant Cantwell to still assign all her duties and monitor her activities.

51.     On or about August 14, 2017, Defendant Cantwell saw Blanks leave the UOHC after 5:00 PM.  The end of Blanks' shift was 4:30 PM.  Defendant Cantwell sent an email to Dr. Brunader, copying Defendant Gutierrez on that email, informing him that she saw Blanks leaving the UOHC after 5:00 PM, presumably to get Blanks into trouble for working unauthorized overtime.

52.     At the end of August 2017, Defendant Cantwell sent an email to select, Caucasian staff, notifying them of meetings with a consultant that UO hired to assess the UOHC. Defendant Cantwell did not send this notification to Blanks, nor to any of the other minorities that were going to be working on the day the consultant would be there.

53.     To date, Defendant Cantwell's hyper scrutiny and micromanagement of Blanks continues and Defendant Cantwell continues to create and maintain a hostile working

PAGE 11 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

environment.

54. Defendant Gutierrez has permitted and condoned Defendant Cantwell's creation and maintenance of a hostile working environment

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**First Amendment Violation**

**Against Defendants Cantwell and Gutierrez**
**in Their Individual Capacities**

55. Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

56. The acts of defendants described herein were taken under color of state law.

57. Blanks exercised her free speech to object to unsafe and unlawful storage and handling of vaccines used to innoculate the public. Defendants retaliated and/or discriminated against Blanks in violation of her right to speak about matters of public concern. Defendants' acts violated Blanks' rights under the First Amendment of the United States Constitution, made applicable to the State of Oregon through the 14th Amendment.

58. Defendants' constitutional abuses and violations were and are directly caused by policies, practices and/or customs devised, implemented, enforced, encouraged and sanctioned by Defendants Cantwell and Gutierrez, including: (a) the failure to adequately and properly train and supervise UOHC employees; (b) the failure to properly and adequately monitor and discipline UOHC employees; (c) the overt and tacit encouragement and sanctioning of, and failure to rectify, the practices that led to the First Amendment violations here.

59. Defendants Cantwell and Gutierrez acted with deliberate indifference to the rights secured by Article I, Section 8 of the Oregon Constitution, and the First Amendment rights of Blanks.

60. As a direct and proximate result of defendants' unlawful acts, Blanks has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

PAGE 12 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

61.     As a direct and proximate result of defendants' unlawful acts, Blanks had to use her sick leave and vacation leave to deal with stress and physical sickness due to emotional distress.  Blanks also incurred out of pocket medical bills as a result of defendants' unlawful acts.

62.     Blanks seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

63.     Defendants' conduct toward Blanks demonstrated a wanton, reckless or callous indifference to the constitutional rights of Blanks, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983
## Race Discrimination - Fourteenth Amendment Violations

### Against Defendants Cantwell and Gutierrez
### in Their Individual Capacities

64.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

65.     The acts of defendants described herein were taken under color of state law.

66.     Blanks has a right to be free from discrimination based on her race pursuant to the Fourteenth Amendment of the United States Constitution.

67.     Defendants violated Blanks' right to be free from discrimination based on race when they created and maintained a work environment that was racially hostile and subjected Blanks to disparate treatment in the terms and conditions of her employment.

68.     Defendants Gutierrez encouraged, sanctioned and ratified the creation and maintenance of a work environment that was racially hostile and subjecting Blanks to disparate treatment in the terms and conditions of her employment.

69.     Defendant Cantwell's constitutional abuses and violations were and are directly caused by policies, practices and/or customs devised, implemented, enforced, encouraged and

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

sanctioned by Defendant Gutierrez including: (a) the failure to adequately and properly train and supervise UOHC employees; (b) the failure to properly and adequately monitor and discipline UOHC employees; (c) the overt and tacit encouragement and sanctioning of, and failure to rectify, the practices that led to the Fourteenth Amendment violations here.

70.     Defendants Cantwell and Gutierrez acted with deliberate indifference to the Fourteenth Amendment rights of Blanks.

71.     As a direct and proximate result of defendants' unlawful acts, Blanks has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

72.     As a direct and proximate result of defendants' unlawful acts, Blanks had to use her sick leave and vacation leave to deal with stress and physical sickness due to emotional distress. Blanks also incurred out-of-pocket medical bills as a result of defendants' unlawful acts.

73.     Blanks seeks equitable relief in the form of having her employment records expunged.

74.     Blanks seeks equitable relief in the form of providing training against racial discrimination, implementation of mandatory yearly training in the areas of diversity, cultural competency and anti-bias training and increased racial and ethnic diversity within the UOHC.

75.     Blanks seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

76.     Defendants' conduct toward Blanks demonstrated a wanton, reckless or callous indifference to the constitutional rights of Blanks, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

///

///

PAGE 14 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1981

#### Against Defendants Cantwell and Gutierrez
#### in Their Individual Capacities

77. Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

78. As alleged herein, Blanks has an employment contract with the State.

79. Blanks has the right to make and enforce contracts and enjoy all benefits, privileges, terms and conditions of the contractual relationship, pursuant to 42 USC §1981.

80. As described herein, defendants impaired Blanks' rights protected by 42 USC §1981 on the basis of race, ethnicity or national origin, in violation of 42 USC §1981.

81. As a direct and proximate result of defendants' unlawful acts, Blanks has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

82. As a direct and proximate result of defendants' unlawful acts, Blanks had to use her sick leave and vacation leave to deal with stress and physical sickness due to emotional distress. Blanks also incurred out-of-pocket medical bills as a result of defendants' unlawful acts.

83. Blanks seeks equitable relief in the form of having her employment records expunged.

84. Blanks seeks equitable relief in the form of providing training against racial discrimination, implementation of mandatory yearly training in the areas of diversity, cultural competency and anti-bias training and increased racial and ethnic diversity within the UOHC.

85. Blanks is entitled to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

///

///

///

PAGE 15 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

**FOURTH CLAIM FOR RELIEF**
**ORS 659A.030; 42 U.S.C. § 2000e-2**

**Against Defendants University of Oregon, Cantwell and Gutierrez**

86. Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

87. As described above, defendants discriminated against Blanks in the terms and conditions of her employment.

88. A substantial factor in defendants' conduct described above was Blanks' race.

89. Defendants Cantwell and Gutierrez aided and/or abetted in the discrimination as described above in violation of ORS 659A.030(g).

90. As a direct and proximate result of defendants' unlawful acts, Blanks has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

91. As a direct and proximate result of defendants' unlawful acts, Blanks had to use her sick leave and vacation leave to deal with stress and physical sickness due to emotional distress.  Blanks also incurred out-of-pocket medical bills as a result of defendants' unlawful acts.

92. Blanks seeks equitable relief in the form of having her employment records expunged.

93. Blanks seeks equitable relief in the form of providing training against racial discrimination to the UOHC, implementation of mandatory yearly training in the areas of diversity, cultural competency and anti-bias training and increased racial and ethnic diversity within the UOHC.

94. Blanks is entitled to reimbursement of her reasonable attorneys' fees and costs pursuant to ORS 659A.885, ORS 20.107, and 42 U.S.C. § 2000e-5(k), if appropriate.

///

///

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

## FIFTH CLAIM FOR RELIEF

### Retaliation for Whistleblowing - ORS 659A.030(f), 659A.203, ORS 659A.199

### Against Defendants University of Oregon, Cantwell and Gutierrez

95.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

96.     By the acts described above, University of Oregon, Cantwell and Gutierrez retaliated against Blanks because she opposed unlawful employment practices and disclosed information that she reasonably believed was evidence of a violation of state and federal law, and/or abuse of authority, and a substantial and specific danger to public health in violation of ORS 659A.030(f), ORS 659A.203 and ORS 659A.199.

97.     Defendants Cantwell and Gutierrez aided and/or abetted in the discrimination as described above in violation of ORS 659A.030(g).

98.     As a direct and proximate result of defendants' unlawful acts, Blanks has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

99.     As a direct and proximate result of defendants' unlawful acts, Blanks had to use her sick leave and vacation leave to deal with stress and physical sickness due to emotional distress.  Blanks also incurred out-of-pocket medical bills as a result of defendants' unlawful acts.

100.    Blanks seeks equitable relief in the form of having her employment records expunged.

101.    Blanks is entitled to reimbursement of her reasonable attorneys' fees and costs pursuant to ORS 659A.885, ORS 20.107, and 42 U.S.C. § 2000e-5(k), if appropriate.

**WHEREFORE**, Plaintiff Blanks prays for judgment against defendants as follows:

1.      Economic damages in the form of lost wages and benefits, consequential damages and prejudgment interest in an amount to be determined at trial;

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

2. Compensatory damages in an amount to be determined at trial;

3. All available equitable relief and damages in amounts to be determined at trial, consistent with the claims above against defendants;

4. Punitive damages consistent with the claims above against defendants in amounts to be determined at trial;

5. Reasonable attorneys' fees and litigation expenses/costs herein, including expert witness fees and expenses, consistent with the claims above against defendants; and

6. Grant such other relief as is just and proper.

DATED this 5th day of October, 2017.          CREIGHTON & ROSE, PC.

                                                           *s/ Beth Creighton*
                                                           Beth Creighton, OSB #972440
                                                           E-mail: *beth@civilrightspdx.com*
                                                           Michael E. Rose, OSB #753221
                                                           E-mail: *mrose@civilrightspdx.com*

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL**

PAGE 18 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com