**Liani J. Reeves, OSB No. 013904**
lreeves@bullardlaw.com
**Kalia Walker, OSB No. 154434**
kwalker@bullardlaw.com
Bullard Law
200 SW Market Street, Suite 1900
Portland, OR  97201
503-248-1134/Telephone
503-224-8851/Facsimile

  Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **DYLAN BLANKS,** | Case No. 6:17-cv-01578 |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW** |
| v. | |
| **UNIVERSITY OF OREGON, LORETTA CANTWELL and LEANN GUTIERREZ, in their individual capacities and their official capacities,** | **REQUEST FOR ORAL ARGUMENT** |
| Defendants. | |

### CERTIFICATE PURSUANT TO LR 7-1

This motion is made by Defendants University of Oregon, Lorretta

Cantwell, and LeAnn Gutierrez ("Defendants").  Pursuant to Local Rule 7-1, Defendants'

counsel certify that they conferred with Plaintiff's counsel Beth Creighton through a

telephone conference in order to make a good faith effort to resolve the dispute that is

Page 1    **DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

the subject of this motion and have been unable to do so.

## MOTION

Pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(1 and 12(b)(6), Defendants move to dismiss the following of Plaintiff's claims:

- First Claim for Relief – Protected Speech (42 U.S.C. § 1983/1st Amendment) against Defendants Cantwell and Gutierrez

- Second Claim for Relief – Race Discrimination (42 U.S.C. § 1983/14th Amendment) against Defendants Cantwell and Gutierrez

- Third Claim for Relief – Race Discrimination (42 U.S.C. § 1981) against Defendants Cantwell and Gutierrez

- Fourth Claim for Relief (Count 1) – Race Discrimination ORS 659A.030) against Defendants Cantwell and Gutierrez

- Fourth Claim for Relief (Count 2) – Race Discrimination (Title VII 42 U.S.C. § 2000e-2) against Defendants University of Oregon, Cantwell, and Gutierrez

- Fifth Claim for Relief Retaliation/Whistleblowing (Count 1) – Retaliation ORS 659A.030(f)) against Defendants Cantwell and Gutierrez

- Fifth Claim for Relief Retaliation/Whistleblowing (Count 2) – Whistleblowing ORS 659A.203) against Defendants Cantwell and Gutierrez

- Fifth Claim for Relief Retaliation/Whistleblowing (Count 3) – Whistleblowing ORS 659A.199) against Defendants University of

Oregon, Cantwell, and Gutierrez

For the reasons stated in the accompanying memorandum, Defendants respectfully move the Court for an Order and Judgment dismissing the claims as outlined above and for such other relief as this Court deems just and appropriate.

Defendants are *not* moving against the following claims:

- Fourth Claim for Relief (Count 1) – Race Discrimination (ORS 659A) against Defendant University of Oregon

- Fifth Claim for Relief Retaliation/Whistleblowing (Count 1) – Retaliation (ORS 659A.030 (f)) against Defendant University of Oregon

- Fifth Claim for Relief Retaliation/Whistleblowing (Count 2) – Whistleblowing (ORS 659A.203) against Defendant University of Oregon

# TABLE OF CONTENTS

INTRODUCTION ........................................................................... 8

SUMMARY OF ARGUMENTS ...................................................... 9

SUMMARY OF FACTS ................................................................ 10

    A.    PLAINTIFF'S SPEECH RELATED TO HANDLING OF VACCINES....10

    B.    ALLEGED RETALIATION FOR PLAINTIFF'S SPEECH RELATED TO HANDLING OF VACCINES................................................................12

    C.    ALLEGED RACIALLY HOSTILE ENVIRONMENT ............................12

    D.    PLAINTIFF'S COMPLAINT WITH AAEO ............................................13

    E.    ALLEGED RETALIATION FOR COMPLAINTS ABOUT DISCRIMINATION................................................................................14

LEGAL STANDARDS .................................................................. 16

    A.    LEGAL STANDARD FOR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1)................................................................................16

    B.    LEGAL STANDARD FOR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6). ..............................................................................16

ARGUMENT................................................................................. 17

    A.    PLAINTIFF CONCEDES THAT HER TITLE VII CLAIMS MUST BE DISMISSED BECAUSE SHE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES, THUS DEPRIVING THIS COURT OF JURISDICTION OVER THOSE CLAIMS. ....................................... 17

    B.    DEFENDANTS CANTWELL AND GUTIERREZ ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S CLAIMS BROUGHT UNDER 42 U.S.C. §§ 1983 AND 1981 BECAUSE THEIR ALLEGED ACTIONS DID NOT VIOLATE CLEARLY ESTABLISHED RIGHTS. ....................................................................18

        1.    Plaintiff's First Amendment Claim under 42 U.S.C. § 1983 must be dismissed.........................................................................20

        2.    Plaintiff's Race Discrimination Claims under 42 U.S.C. §§ 1983 and 1981 must be dismissed. ...............................................25

        3.    Plaintiff's Hostile Work Environment Claims under 42

U.S.C. §§ 1983 and 1981 must be dismissed.............................. 28

C.    PLAINTIFF'S CLAIMS BROUGHT UNDER OREGON STATE LAW
MUST BE DISMISSED AGAINST THE INDIVIDUAL
DEFENDANTS AND THE UNIVERSITY SHOULD BE
SUBSTITUTED AS THE SOLE DEFENDANT. .................................... 30

D.    PLAINTIFF'S WHISTLEBLOWING CLAIM UNDER ORS 659A.199
MUST BE DISMISSED BECAUSE ORS 659A.203 PROVIDES THE
EXCLUSIVE BASIS FOR A WHISTLEBLOWING CLAIM AGAINST
A PUBLIC EMPLOYER. ........................................................................32

CONCLUSION ............................................................................................................35

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM OF LAW**

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) ..............................30

*Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ....... 19

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) ......... 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S.Ct. 1937, 173 L.Ed.2d (2009) ................17

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002) ...........................................................................................................................17

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929......17

*Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) .....................................29

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 126 S. Ct. 2405, 2411, 165 L. Ed. 2d 345 (2006)................................................................................................... 27

*Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) ................................................17

*Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007) .............................. 18

*Daniels v. BASF Corp.*, 270 F. Supp. 2d 847, 855 (S.D. Tex. 2003) ........................... 16, 30

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9ᵗʰ Cir. 2010)............................... 16

*Eugenio v. Walder*, 2009 WL 1904526, at *7 (S.D.N.Y. July 2, 2009) ............................ 23

*Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) ..... 21, 24

*Grossman v. City of Portland*, 33 F.3d 1200, 1208 (9th Cir. 1994).................................. 19

*Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016)..............................................25

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)..........18

*Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010)...............................26

*Hoang v. Wells Fargo Bank, N.A.*, 724 F. Supp. 2d 1094, 1104 (D. Or. 2010)...............28

*Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) ..................................28

*Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 822 (9th Cir. 2017) ............................. 21

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ....................................................................................................................... 16

*Leonard Williamson v. Department of Corrections*, Oregon Supreme Court Case No. S064696.....................................................................................................................35

*Lindsey v. Clatskanie People's Utility District*, 140 F.Supp.3d 1077 (D. Or. 2015) ..33, 34

*Love v. Polk County Fire Dist.*, 209 Or. App. 474 (2006)................................................35

*Minger v. Hood Community College District*, No. 3:14-CV-01460-SI, 2016 WL 475382, at *6-7 (D. Or. Feb. 4, 2016) .........................................................................................35

*Moran v. State of Wash.*, 147 F.3d 839, 847 (9th Cir. 1998) ..........................................25

*Morrow v. City of Oakland*, 690 F. App'x 517, 518 (9th Cir. 2017) ................................ 18

*Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).....................................................19

*Nichol v. City of Springfield*, No. 6:14-CV-01983-AA, 2016 WL 3512071, at *4 (D. Or. June 27, 2016) ............................................................................................................35

*Pagani v. Meriden Bd. of Educ.*, 2006 WL 3791405, at *4 (D. Conn. Dec. 19, 2006) ....23

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)................................................................17

*Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)....19

*Peters v. Lieuallen*, 746 F.2d 1390, 1393 (9th Cir. 1984) ...............................................25

*Ramadan v. City of Napa*, No. C 06-01804 MHP, 2007 WL 1655624, at *4 (N.D. Cal. June 7, 2007) ..............................................................................................................28

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9ᵗʰ Cir. 2010) ..... 16

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) .........................17

*Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) ..................29

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) .................................. 19

*Vasquez v. Cty. of Los Angeles,* 349 F.3d 634, 643-644 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ......................................................................................30

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ........................................................ 16

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ........................... 16

*Woods v. Washington*, 475 F. App'x 111, 112 (9th Cir. 2012) ........................................ 27

**Statutes**

42 U.S.C. § 2000e-5(e)(1) ...............................................................................................17

ORS 30.260 to 30.300 ..................................................................................................... 31

ORS 30.265(2) .................................................................................................................. 31

ORS 30.265(3) .................................................................................................................. 31

ORS 30.271 ...................................................................................................................... 31

ORS 30.271(4). ................................................................................................................ 31

ORS 30.285 ...................................................................................................................... 31

ORS 30.287 ...................................................................................................................... 31

ORS 676.150. ................................................................................................................... 23

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 16

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 4, 16

Fed. R. Evid. 201 (b)(2) .................................................................................................. 32

Fed. R. Evid. 201(c). ....................................................................................................... 32

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

## MEMORANDUM OF LAW

## INTRODUCTION

Plaintiff Dylan Blanks is the lead nurse in the University of Oregon Nurse Specialty Clinic in the University Health Clinic. Defendant Cantwell became Plaintiff's supervisor in September 2015. Shortly thereafter, the relationship between Plaintiff and Defendant Cantwell quickly unraveled. Defendant Cantwell implemented a number of management strategies to hold Plaintiff accountable for her job duties. In response, Plaintiff accused Defendant Cantwell of race discrimination. By June 2016, the University Affirmative Action and Equal Opportunity Office ("AAEO") had conducted an investigation and concluded that Defendant Cantwell had engaged in conduct towards Plaintiff that was at least, in part, based on race.[1]

Plaintiff will likely rely heavily on the report in this case, as she does in her Complaint. In addition to its questionable admissibility, there are a number of reasons why the AAEO report is not the smoking gun she would like it to be. However, for purposes of this Motion to Dismiss, the Court must assume the facts as alleged. Defendants are not asking the Court to disagree with the report, to disagree with Plaintiff's allegations, or to make any determination as to whether she was subjected to discrimination based on race.

As noted above, this motion does not seek to dismiss all of Plaintiff's claims. The Court also need not resolve the *merits* of Plaintiff's race discrimination claims against the University of Oregon; that question will be saved for another day.

---

[1] Although not dispositive to this motion, Defendant Cantwell was disciplined as a result of the AAEO findings.

Rather, Defendants move to dismiss at this stage only the claims that have not been properly brought and to dismiss the individual defendants based on their entitlement to immunity against both the state and federal claims.

## SUMMARY OF ARGUMENTS

This case involves allegations of violations of free speech, race discrimination, retaliation, and whistleblowing. The allegations are voluminous and the claims are numerous. Plaintiff's claims essentially boil down to three different theories: alleged discrimination and harassment based on race; alleged retaliation for engaging in protected speech; and alleged retaliation for reporting what she believed to be racially discriminatory practices.

Defendants move to dismiss for the following reasons:

1. Plaintiff concedes that her Title VII claims must be dismissed in their entirety because she failed to exhaust her administrative remedies, thus depriving this Court of jurisdiction over those claims.

2. Defendants Cantwell and Gutierrez are entitled to qualified immunity on Plaintiff's claims brought under 42 U.S.C. §§ 1983 and 1981 because their alleged actions did not violate clearly established rights.

3. Plaintiff's claims brought under Oregon state law must be dismissed against the individual defendants and the University should be substituted as the sole defendant.

4. Plaintiff's whistleblowing claim under ORS 659A.199 must be dismissed because ORS 659A.203 provides the exclusive basis for a whistleblowing claim against a public employer.

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

## SUMMARY OF FACTS

Plaintiff's Complaint is voluminous. Taking the facts pled in the Complaint as true for purposes of this Motion to Dismiss, Defendants attempt to summarize the relevant facts as follows:

Plaintiff was hired as a registered nurse in April 2007 and was promoted to lead nurse in 2010 in the Nurse Specialty Clinic ("NSC") at the University of Oregon ("University" or "UO") and in the UO's Health Center ("UHC"). (Compl. ¶¶ 3, 9) Defendant Lorretta Cantwell has served as the Director of Nursing for the UHC since September 2015. (Compl. ¶¶ 4, 10) Defendant LeAnn Gutierrez has served as the Director of the UHC since 2016. (Compl. ¶¶ 5, 11)

The UHC's mission is to provide exceptional culturally competent health services and public health leadership that enhances personal success and optimizes health and wellness for a diverse campus community. (Compl. ¶ 7) UHC is required to comply with state and federal laws governing the health care industry including laws and regulations governing the safe storage of vaccines and Center for Disease Control ("CDC") and Vaccine for Children ("VFC") guidelines. (Compl. ¶¶ 7, 12, 17) Specific state and federal requirements for compliance are outlined in Plaintiff's Complaint in paragraphs 13-17.

Plaintiff brings claims alleging race discrimination, retaliation for engaging in speech related to the handling of vaccines, and retaliation for reporting Defendant Cantwell's alleged discriminatory conduct.

## A.    Plaintiff's Speech Related to Handling of Vaccines

As part of Plaintiff's job duties, Plaintiff monitors the Digital Data Loggers

("DDL") for the vaccine refrigerators for compliance with CDC and VFC requirements (Compl. ¶ 9), packs flu vaccines for offsite clinics (Compl. ¶ 20, 34), and has served as "vaccine coordinator" for a number of years (Compl. ¶ 46).

On or around October 7, 2016, the temperature range for the safe storage of flu vaccinations went out of compliance at a UO flu clinic. (Compl. ¶¶ 20-23) Plaintiff brought the non-compliance to Defendant Cantwell's attention. (Compl. ¶ 24) On or around October 17, 2016, the temperature range for the safe storage of flu vaccinations went out of compliance at another UO flu clinic.  (Compl. ¶ 28) On or about October 21, 2016, Plaintiff informed the Medical Director Dr. Brunader that the flu vaccines for the October 17, 2016 flu clinic had been out of range. (Compl. ¶ 31) Plaintiff alleges that Defendant Cantwell "falsified" a report related to this incident. (Compl. ¶ 32) On or about October 26, 2016, Plaintiff sent an email to Dr. Brunader and Defendant Cantwell telling them she was concerned about the vaccine possibly freezing and stating that she did not put the top layer of frozen water bottles on the top of the vaccines in the box. (Compl. ¶ 34) The vaccines fell below the recommended temperature and the clinic was unable to use the vaccines. (Compl. ¶ 34)

On or about January 18, 2017, Plaintiff filed a complaint against Defendant Cantwell with the Board of Nursing "regarding the October 17, 2016 vaccine incidents" and alleged "falsification of temperature records."[2] (Compl. ¶ 43)

///

///

///

---

[2] This complaint was later dismissed by the Board.

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

B.    **Alleged Retaliation for Plaintiff's Speech Related to Handling of Vaccines**

Plaintiff alleges that Defendant Cantwell engaged in conduct creating a "hostile work environment" for Plaintiff "after Blanks reported Defendant Cantwell's non-compliance with the temperature protocol for the vaccines." (Compl. ¶ 41) The alleged conduct includes: micromanagement; monitoring phone calls; addressing Plaintiff in a rude manner; responding to Plaintiff in a "cold, accusatory, and suspicious matter"; "slowly taking away her responsibilities" and "her independent, autonomous decision-making job duties"; "transferring her lead duties and responsibilities" to subordinate nurses; "putting additional expectations on her"; questioning "what she did and why"; "consistently trying to find fault with her performance"; "subjecting her to heightened and disparate expectations"; and "disparately disciplining her." (Compl. ¶ 41) Plaintiff offers no allegations of what she believes to be "disparate discipline" other than the other actions already alleged.

C.    **Alleged Racially Hostile Environment**

Plaintiff is one of the few African American employees at the UHC. (Compl. ¶ 3) She alleges that she was subject to a racially hostile environment by Defendant Cantwell. It is difficult to tell what Plaintiff specifically alleges in support of her hostile work environment claim. As far as Defendants can tell, Plaintiff offers the following allegations as alleged harassment by Ms. Cantwell:

In the Fall of 2016, Defendant Cantwell scheduled meetings every Wednesday between 3:45 and 4:00pm "to have Blanks show her that none of the refrigerators were out of compliance with the recommended temperature range" and Defendant Cantwell "lead this parade in a very exaggerated and demeaning way…"

Page 12  **DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

(Compl. ¶ 19)

On October 11, 2016, during a joint nursing meeting, Plaintiff asked a question and Defendant Cantwell "was extremely rude and dismissive of Blanks' concerns and chastised her for bringing up the issue." (Compl. ¶ 25) Later that day Plaintiff addressed Defendant Cantwell "telling her that she felt she was being harassed by Cantwell and asking what she needed to make it stop. Defendant Cantwell just stared at her with a smile on her face. Blanks asked again. Defendant Cantwell remained silent and smiled even bigger. Defendant Cantwell finally said 'I'm sorry you feel that way,' walked away and continued smiling like the cat that ate the canary." (Compl. ¶ 26)

### D.    Plaintiff's Complaint with AAEO

In the Fall of 2016, Plaintiff lodged a complaint with the UO's AAEO Office alleging Defendant Cantwell subjected her to disparate treatment and a hostile work environment based on race. (Compl. ¶ 42) The AAEO issued findings on or around June 22, 2017, finding "by a preponderance of evidence Ms. Cantwell treated [Blanks] differently than others in a number of ways, and that race was more likely than not at least a factor in her treatment of [Blanks]." (Compl. ¶ 49) The investigation results also found "that a preponderance of evidence established that Ms. Cantwell engaged in conduct towards [Blanks] that was at least in part based on [Blanks'] race, was unwelcome and sufficiently pervasive that it created an intimidating and hostile working environment for [Blanks] and interfered with [Blanks'] work."[3] (Compl. ¶ 49) After the

_____

[3] Plaintiff's Complaint quotes heavily from the AAEO report, thereby incorporating the document by reference. She includes excerpts that are supportive of her allegations. She does not, however, include the fact that the AAEO report also found that Plaintiff's claim of race discrimination was not supported because Plaintiff did not establish that she suffered any adverse employment action, nor did she include in her

[Footnote continued on next page]

Page 13 **DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

AAEO findings, UO had Plaintiff report to Dr. Brunader, but allowed Defendant Cantwell to still assign all her duties and monitor her activities. (Compl. ¶ 50)

### E.    Alleged Retaliation for Complaints About Discrimination

Plaintiff alleges that the day after she told Defendant Cantwell that "she felt she was being harassed by Cantwell and asking what she needed to do to make it stop," (Comp. ¶ 26), Defendant Cantwell "increased her scrutiny and supervision of Blanks notifying her that she was requiring additional weekly one-on-one meetings with Cantwell." (Compl. ¶ 27)

The following day, Defendant Cantwell requested that Plaintiff go with her to the office. Plaintiff told Ms. Cantwell that she did not want to go because she did not want to be written up without union representation. Defendant Cantwell told Blanks that the meeting was not about disciplinary action and presented Plaintiff with a document of "expectations" that ended with a phrase threatening termination if these expectations were not met. (Compl. ¶ 35) Plaintiff walked out of the meeting and Defendant Gutierrez called her back into Defendant Cantwell's Office. (Compl. ¶ 36) Plaintiff complained to Defendant Gutierrez about Defendant Cantwell misrepresenting the events that occurred earlier that day.  (Compl. ¶  36) Defendant Cantwell started again to speak and make further representations. (Compl. ¶  36) Plaintiff, sitting across the room, told her to "stop lying" and held her hand up in a "stop" motion. (Compl. ¶ 36) Defendant Cantwell became even more agitated and told Blanks to "get [her] hand out of my face!" (Compl. ¶  36) Plaintiff alleges she was across the room from Defendant

[Continued from previous page]

allegations the fact that Defendant Cantwell was disciplined as a result of the AAEO findings.

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Cantwell and her hand was several yards away, and nowhere near her face. (Compl. ¶ 36)

After the meeting, Plaintiff requested to have a one on one meeting with Defendant Gutierrez where Plaintiff told her "about Defendant Cantwell's harassment and terrible treatment of Blanks." (Compl. ¶ 37) Plaintiff told her that she felt Defendant Cantwell was offended by her use of hand gestures when she talked and that in many cultures, people talk with their hands more than they do in mainstream American culture, and suggested that there be a training at the clinic on diverse ways of communication.[4] (Compl. ¶ 38)

On or around December 8, 2016, Plaintiff met with Defendant Gutierrez and spent about two hours relaying how Defendant Cantwell treated her. Plaintiff was put on "administrative leave" while an investigation was initiated into her allegations. (Compl. ¶ 39) Defendant Cantwell told others that Plaintiff was put on administrative leave because she "played the race card" and her comments were inappropriate and unprofessional." (Compl. ¶ 40)

After the AAEO report, Plaintiff alleges other acts of retaliation which generally consist of allegations of Defendant Cantwell's "hyper scrutiny and micromanagement" and that Defendant Gutierrez has "permitted and condoned Defendant Cantwell's creation and maintenance of a hostile working environment." (Compl. ¶¶ 45-54)

---

[4] Notably, this is the *one and only* allegation where any reference to race is made in Plaintiff's alleged treatment by Defendant Cantwell.

**LEGAL STANDARDS**

**A.    Legal Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1).**

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction and are presumed to lack subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The burden of establishing the contrary is on the Plaintiff. *Id.* A challenge to subject matter jurisdiction may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

**B.    Legal Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6).**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint and allows dismissal to the extent the pleading fails to state a claim upon which relief can be granted. A complaint fails to state a claim when there is no cognizable legal theory or the factual allegations are insufficient to support a claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

In evaluating the sufficiency of a pleading's factual allegations, the Court must draw all reasonable inferences in favor of the non-moving party and accept all well-pleaded material facts as true. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[But] a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955,

167 L.Ed.2d 929 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)).

The Court cannot assume unstated facts, nor will it draw unwarranted inferences or accept as true any legal conclusion set forth in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S.Ct. 1937, 173 L.Ed.2d (2009); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## ARGUMENT

**A.    Plaintiff concedes that her Title VII claims must be dismissed because she failed to exhaust her administrative remedies, thus depriving this Court of jurisdiction over those claims.**

Defendants move to dismiss Plaintiff's Title VII claims (Fourth Claim for Relief, Count 2) in their entirety under Fed. R. Civ. P. 12(b)(1) and against all defendants, the University of Oregon, Defendant Cantwell, and Defendant Gutierrez.

In order to establish subject matter jurisdiction over a Title VII claim, a plaintiff must first exhaust her administrative remedies by filing a timely administrative charge with the EEOC thereby affording the agency an opportunity to investigate. 42 U.S.C. § 2000e-5(e)(1); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002).

Plaintiff's lack of subject matter jurisdiction over her Title VII claim is both facial and factual. Plaintiff alleges no facts stating that she met the jurisdictional requirements to bring a Title VII claim, nor can she because she failed to file an administrative complaint with the EEOC. Upon conferring on this motion, counsel for Plaintiff stated that she would concede that Plaintiff's Title VII claims should be

dismissed.[5]

**B.    Defendants Cantwell and Gutierrez are entitled to qualified immunity on Plaintiff's claims brought under 42 U.S.C. §§ 1983 and 1981 because their alleged actions did not violate clearly established rights.**

Defendants move to dismiss Plaintiff's race discrimination claims brought against individual Defendants Cantwell and Gutierrez under 42 U.S.C. §§ 1983 and 1981 (First, Second, and Third Claims for Relief) because they are entitled to qualified immunity.

An individual defendant is entitled to qualified immunity when his/her alleged actions do not violate "clearly established" rights. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The query is not *whether* the alleged actions did or did not violate a right (indeed, an individual defendant is entitled to qualified immunity *in spite of* the fact that she may have violated a right), the query is whether the defendant should have known at the time of his or her alleged actions, that

---

[5] Defendants would have separately moved to dismiss Plaintiff's Title VII claims brought against the individual Defendants Cantwell and Gutierrez as there is no individual supervisor liability under Title VII. *See Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007); *Morrow v. City of Oakland*, 690 F. App'x 517, 518 (9th Cir. 2017). However, Plaintiff's concession that she did not meet the administrative requirements to bring a Title VII claim made that argument unnecessary to brief, but Defendants mention it here to preserve it.

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

the actions were "clearly established" to be a violation of Plaintiff's constitutional or statutory rights.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotation marks and citation omitted). In other words, a public official's claim of qualified immunity is defeated only if "in the light of pre-existing law the unlawfulness of his conduct was 'apparent.'" *Grossman v. City of Portland*, 33 F.3d 1200, 1208 (9th Cir. 1994) (quoting *Anderson*, 483 U.S. at 640). "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) (internal punctuation and citations omitted).

The purpose of qualified immunity is to "recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Reasonable personnel decisions made by public officials based on the unique circumstances confronted should not open a public official up to personal liability for these actions. *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (qualified immunity shields public employees from "harassment, distraction, and liability" of litigation when they perform their duties reasonably).

As will be discussed below, Plaintiff's claims under 42 U.S.C. §§ 1983 and

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

1981 rest on an alleged a set of actions that did not form the basis of a "clearly established" violation of a constitutional or statutory right. All the parties involved in this case—Plaintiff and Defendants Cantwell and Gutierrez—were public officials charged with critical duties to protect the health and safety of the UO community. Defendants Cantwell and Gutierrez's actions were made to advance those duties and they should not face personal liability for these actions which, even if found to be mistaken, were not unreasonable given the state of clearly established law.

> **1.    Plaintiff's First Amendment Claim under 42 U.S.C. § 1983 must be dismissed.**

Defendants move to dismiss Plaintiff's claim under 42 U.S.C. § 1983 alleging violation of the First Amendment (First Claim for Relief). Plaintiff's claim must be dismissed for the following reasons: First, Plaintiff fails to state a claim because the speech alleged is not protected under the First Amendment. Second, even if the Court were to find that Plaintiff's speech was protected, Defendants Cantwell and Gutierrez are entitled to qualified immunity because under case law limiting free speech protections for public employees, it cannot be said that it was "clearly established" law that Plaintiff's speech would be protected.

> **a.    Plaintiff's speech was not protected speech under the First Amendment.**

Plaintiff alleges that she was retaliated against for speaking out about the improper handling of vaccines by reporting concerns to Defendant Cantwell, to Dr. Brunader, and for filing a complaint with the Oregon Board of Nursing. All of Plaintiff's speech was made pursuant to her job duties as the Lead Nurse responsible for the handling of vaccines and in her role as a registered nurse licensed with the Board. This

type of speech is not protected under the First Amendment.

It is well-established law that a public employee is not entitled to First Amendment protections for speech made in furtherance of his or her job duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (First Amendment did not protect employee's speech made pursuant to job duties). In the Ninth Circuit, First Amendment retaliation claims by public employees are governed by a five-step framework.[6] To establish a First Amendment violation, Plaintiff must show that "(1) [s]he spoke on a matter of public concern, (2) [s]he spoke as a private citizen rather than a public employee, and (3) the relevant speech was a substantial or motivating factor in the adverse employment action.  Upon that showing, the [defendant] must demonstrate that (4) it had an adequate justification for treating [plaintiff] differently from other members of the general public, or (5) it would have taken the adverse employment action even absent the protected speech." *Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 822 (9th Cir. 2017) (internal citations omitted).

The Court need not move past the first two elements. Even assuming Plaintiff spoke on a matter of public concern, she cannot establish that her constitutional rights were violated because she did not speak as a private citizen. To resolve whether a public employee spoke as a private citizen, rather than a public employee, courts in the Ninth Circuit undertake a two-pronged analysis. *Id.* at 823-24. First, the Court must make a factual determination as to plaintiff's job responsibilities. *Id.*  Second, the court must resolve a legal question – whether the plaintiff's speech was

---

[6] Plaintiff's Complaint states that her First Claim for Relief is a "First Amendment Violation." Defendants interpret this mean Plaintiff is bringing a First Amendment retaliation claim.

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

made pursuant to his or her job duties. *Id.* In other words, the Court must assess whether Plaintiff's speech "owes its existence" to her position as a Lead Nurse. *See id.* at 827.

### (1)    Plaintiff's alleged speech was not protected in light of her job duties.

Plaintiff claims that she "exercised her free speech to object to unsafe and unlawful storage and handling of vaccines used to innoculate [sic] the public." (Compl. ¶ 57) She alleges that she made complaints of this nature to Defendant Cantwell (Compl. ¶¶ 20, 24, 31), Dr. Brunader (Compl. ¶¶ 31, 34), and to the Oregon Board of Nursing. (Compl. ¶ 43)

This speech, however, "owes its existence" to her position as a Lead Nurse and fell squarely within her job duties. It is clear on the face of Plaintiff's complaint that her job duties as a Lead Nurse at UHC involved managing the storage and handling of vaccines. Plaintiff states that part of her job duties as a Lead Nurse included monitoring the "Digital Data Loggers ('DDL') for the vaccine refrigerators for compliance with CDC requirements and Vaccine for Children ("VFC") requirements." (Compl. ¶ 9.) Plaintiff further alleges that "on or about October 6, 2016," "[s]he explained the process for monitoring the temperature of the vaccinations to the nurse that would be administering the flu vaccines." (Compl. ¶ 20) Plaintiff's Complaint also includes several instances evidencing that vaccine storage and maintenance were part of her job duties. (*See* Compl. ¶¶ 30, 33, 34)

Further, Plaintiff, as a licensed registered nurse, is a mandatory reporter. As a registered nurse, Plaintiff made the report of Defendant Cantwell's alleged "unprofessional conduct" pursuant to her mandatory reporting duties under ORS

676.150.[7] As such, Plaintiff's complaint was not protected speech because the complaint was within the ambit of her duties as a nurse at UHC and as a mandatory reporter. Cases from other courts have found that these types of mandatory reports are *not* constitutionally protected. *See, e.g., Pagani v. Meriden Bd. of Educ.*, 2006 WL 3791405, at *4 (D. Conn. Dec. 19, 2006) (teacher's report of child abuse not constitutionally protected because it was mandated by district policy and state law); *Eugenio v. Walder*, 2009 WL 1904526, at *7 (S.D.N.Y. July 2, 2009) (school nursing staff reports of suspected abuse at a public school not constitutionally protected speech as they were made pursuant to official duties).

Because Plaintiff's speech with respect to the storage and handling of vaccines was all made pursuant to her job duties as a registered nurse with the responsibility for the safe handling of vaccines, Plaintiff's speech is not protected speech under the First Amendment. Accordingly, Plaintiff's claim brought under 42 U.S.C. § 1983 for violation of First Amendment rights should be dismissed against Defendants Cantwell and Gutierrez.

(2)      **Even if Plaintiff's speech was protected, Defendants Cantwell and Gutierrez did not**

---

[7] ORS 676.150 provides that "[A] licensee who has reasonable cause to believe that another licensee has engaged in prohibited or unprofessional conduct shall report the conduct to the board responsible for the licensee who is believed to have engaged in the conduct." "Unprofessional conduct" is defined as "conduct unbecoming a licensee or detrimental to the best interests of the public, including conduct contrary to recognized standards of ethics of the licensee's profession or conduct that endangers the health, safety or welfare of a patient or client."

**violate any right that was "clearly established."**

The Court should dismiss Plaintiff's First Amendment claim on the merits due to her speech not qualifying as protected speech. If the Court were to find that Plaintiff's speech was protected speech, Defendants Cantwell and Gutierrez are entitled to qualified immunity on this claim. Given the case law discussed above which outlines the well-established limits on a public employee's free speech rights, it cannot be said that any violations of Plaintiff's First Amendment rights could be violations of "clearly established" law. To the contrary, the relevant and binding case law provides that it has been "clearly established" that a public employee will *not* be protected for speech made pursuant to her official job duties. Qualified immunity is designed to protect public officials from personal liability where it is *not* clear that their actions are unlawful. Any departure from *Garcetti* and the line of cases finding that protected speech does not include speech by public employees who speak pursuant to their job duties would be a shift from established precedent and exactly the type of scenario where qualified immunity should shield a public official from liability.

The one area where Defendants concede there may be a lack of clarity in the law is whether Plaintiff's report to the Board of Nursing is protected speech. That lack of clarity, however, *supports* qualified immunity for Defendants Cantwell and Gutierrez. Defendants could not find binding cases in this jurisdiction that would establish that a mandatory report to a licensing board is protected speech, and in fact, found decisions from other courts which hold to the contrary. Applying the qualified immunity test, it cannot be said that when Plaintiff complained to the Board of Nursing that it was "beyond debate" that her mandatory report was protected speech. *See*

*Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (to be a "clearly established" right "existing precedent must have placed the ... constitutional question beyond debate") (internal quotation marks and citation omitted).

To defeat qualified immunity, Plaintiff must show that a reasonable official in Defendants Cantwell's or Gutierrez's position *would have known* that a mandatory report to an outside state agency was protected by the First Amendment. That is clearly not the case here. Accordingly, Defendants Cantwell and Gutierrez are entitled to qualified immunity on Plaintiff's First Amendment claim, a consistent outcome in the First Amendment context.[8]

### 2. Plaintiff's Race Discrimination Claims under 42 U.S.C. §§ 1983 and 1981 must be dismissed.

Defendants move to dismiss Plaintiff's claims for race discrimination under 42 U.S.C. §§ 1983 and 1981 (Second and Third Claims for Relief) against Defendants Cantwell and Gutierrez because they are entitled to qualified immunity for those claims.

To prevail on her §§ 1983 and 1981 claims based on race discrimination, Plaintiff must establish a prima facie case of intentional race discrimination under the Title VII framework. *See Peters v. Lieuallen*, 746 F.2d 1390, 1393 (9th Cir. 1984) (because plaintiff failed to prove intentional discrimination under Title VII, claims

---

[8]Defendants do not waive the fourth element of Plaintiff's retaliation claim. Even assuming, *arguendo*, Plaintiff satisfies the first three elements of her claim, Defendants had an adequate justification for their personnel decisions and would be entitled to qualified immunity for this reason as well. *See Moran v. State of Wash.*, 147 F.3d 839, 847 (9th Cir. 1998) ("[W]hether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, the law regarding such claims will rarely, if ever, be sufficiently "clearly established" to preclude qualified immunity.")

under §§ 1981 and 1983 must also fail). Therefore, to establish a prima facie case of discrimination, Plaintiff must show (1) she was a member of a protected class; (2) she was qualified for her position and performing her job satisfactorily; (3) she experienced an adverse employment action; and (4) that "similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (internal citation and quotation marks omitted).

Defendants are entitled to qualified immunity because their actions did not violate "clearly established rights." To be clear, Defendants are not arguing that it was not a "clearly established right" for Plaintiff to be free from discrimination based on race. However, to be actionable discrimination based on race, all four elements discussed above must be met and each element is subject to its own analysis and body of case law. In this case, the third element – what constitutes an "adverse employment action" – has been subject to many cases attempting to define what might or might not constitute an "adverse employment action" necessary to meet the elements of unlawful discrimination. Indeed, the actions alleged by Plaintiff as "adverse employment actions" in this case are not definitively "adverse employment actions" under "clearly established" law. [9] As such, Defendants Cantwell and Gutierrez are entitled to qualified immunity.

---

[9] In fact, the AAEO report, which has been incorporated into Plaintiff's complaint by reference, concluded that Plaintiff had suffered no adverse employment action.

To establish she suffered an "adverse employment action," Plaintiff must show that Defendants Cantwell's and Gutierrez's actions materially impacted her compensation, workplace conditions, or privileges of employment. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 126 S. Ct. 2405, 2411, 165 L. Ed. 2d 345 (2006). Most of the allegations in Plaintiff's complaint amount to nothing more than complaints of micromanagement or heightened supervision by Ms. Cantwell. For example, she complains that Ms. Cantwell asked her to attend additional meetings (*see* Compl. ¶ 27), did not ask her to attend additional meetings (*see* Compl. ¶¶ 46, 52), asked her to justify the expenditure of public funds (*see* Compl. ¶ 45), and reported her working without authorization for overtime (see Compl. ¶ 51). These cannot be argued that they even come close to "adverse employment decisions" under any law, and not clearly established law.

Plaintiff can only reasonably point to her "expectations" letter and paid administrative leave as adverse employment actions sufficient to establish her race discrimination claims.[10] At the time these actions occurred, however, there was no case law clearly establishing that either the "expectations" letter or her paid administrative leave met this standard. The "expectations" letter was not disciplinary and did not result in a change in Plaintiff's compensation or the terms or conditions of her employment. Moreover, it is far from settled whether even a written reprimand is an adverse action in the Ninth Circuit. *See, e.g., Woods v. Washington*, 475 F. App'x 111, 112 (9th Cir. 2012)

---

[10] Plaintiff makes conclusory statements that she was subjected to "disciplinary action" and that Cantwell "disparately discipline[ed] her." (Compl. ¶¶ 34, 41) However, Plaintiff must provide more than "labels and conclusions" and a full review of her complaint shows that none of the actual actions alleged were disciplinary in nature.

(written disciplinary actions were not an adverse action because they did not affect plaintiff's "compensation, workplace conditions, responsibilities, or status"); *Hoang v. Wells Fargo Bank, N.A.*, 724 F. Supp. 2d 1094, 1104 (D. Or. 2010) (a warning letter which caused no materially adverse change in conditions of the plaintiff's employment was not an adverse employment action*); Ramadan v. City of Napa*, No. C 06-01804 MHP, 2007 WL 1655624, at *4 (N.D. Cal. June 7, 2007) (holding that as a matter of law employer's written reprimand and counseling memoranda were not adverse actions).

It is also not clearly established that paid administrative leave is an adverse employment action in this jurisdiction under Title VII. There is no controlling case holding that paid administrative leave is an adverse action in this context. Notably, "other courts of appeals have unanimously concluded that 'placing an employee on paid administrative leave where there is no presumption of termination' is not an adverse employment action under the substantive provision of Title VII." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (holding that paid administrative leave was not an adverse employment action under Title VII and noting other circuits who have held the same).

Because no case law clearly established that Plaintiff's "expectations" letter and paid administrative leave were adverse employment actions, Defendants Cantwell and Gutierrez could not have reasonably understood that their imposing such non-disciplinary actions violated Plaintiff's clearly established rights. Accordingly, Plaintiff's §§ 1983 and 1981 race discrimination claims should be dismissed.

**3.    Plaintiff's Hostile Work Environment Claims under 42 U.S.C. §§ 1983 and 1981 must be dismissed.**

Finally, because the law in this jurisdiction has not clearly established

conduct which constitutes a hostile work environment, Defendants Cantwell and Gutierrez are entitled to qualified immunity from these claims as well. To establish a prima facie case for a hostile work environment claim, Plaintiff must show that: (1) she was subjected to verbal or physical conduct because she is African-American; (2) the conduct was unwelcome; and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (citation omitted). Courts in this Circuit "use a totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of hostile work environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (citation omitted).

Plaintiff's complaint contains thirteen specific actions by Defendant Cantwell which she alleges created a "hostile work environment." (Compl. ¶ 41) However, Plaintiff alleges that she experienced a hostile work environment "after Plaintiff reported Defendant Cantwell's non-compliance with the temperature protocol for the vaccines." (Compl. ¶ 41) This alleged motive may support other types of claims, but it does not support a hostile work environment claim based *on race*. Moreover, Plaintiff's list of allegedly harassing actions does not reference any behavior that could be attributed to racial animus, a requirement under her claims alleging a racially hostile environment under 42 U.S.C. §§ 1983 and 1981.

Accordingly, as noted above, Defendants understand Plaintiff' hostile work environment claim to be based on Defendant Cantwell's alleged micromanagement and rude behavior. However, as of the dates of the actions in question here, no controlling

case law had clearly established that these actions, individually or taken together, were sufficiently severe or pervasive enough to support a hostile work environment claim. For example, Plaintiff claims that Defendant Cantwell micromanaged her and frequently questioned how she performed her job. These actions, even combined with other alleged misbehavior, do not necessarily rise to the level of a hostile work environment. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (finding no hostile work environment when plaintiffs alleged unusually close supervision, unfair write-ups, and financially harmful floor reassignments); *Daniels v. BASF Corp.*, 270 F. Supp. 2d 847, 855 (S.D. Tex. 2003) (finding no hostile work environment where Plaintiff's supervisor treated her differently than a coworker by, among other things, raising his voice to her, giving her instructions regarding how to answer the telephone that he did not give other employees, and giving her negative performance evaluations). Plaintiff claims Defendant Cantwell was rude and dismissive. Likewise, this conduct, even coupled with other alleged misconduct, does not necessarily establish a hostile work environment claim. *See Vasquez v. Cty. of Los Angeles,* 349 F.3d 634, 643-644 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (finding no hostile work environment where higher ranking employee yelled at plaintiff and made racially insensitive comments).

Because Plaintiff's allegations do not establish that Defendants Cantwell's and Gutierrez's actions constitute a hostile work environment under clearly established law, they are entitled to qualified immunity on Plaintiff's § 1983 and § 1981 claims.

**C.    Plaintiff's claims brought under Oregon state law must be dismissed against the individual defendants and the University should be substituted as the sole defendant.**

Plaintiff brings the following Oregon statutory claims against the

University of Oregon and the individually named Defendants Cantwell and Gutierrez:

- ORS 659A.030 Race discrimination (Fourth Claim for Relief, Count 1)

- ORS 659A.030(f) Retaliation for reporting race discrimination (Fifth Claim for Relief, Count 1)

- ORS 659A.203 Public whistleblowing (Fifth Claim for Relief, Count 2)

- ORS 659A.199 Whistleblowing (Fifth Claim for Relief, Count 3)

The individual defendants must be dismissed based on the Oregon Tort Claims Act ("OTCA") ORS 30.260 to 30.300. The sole cause of action for a tort committed by officers, employees, or agents of a public body acting within the scope of their employment is under the OTCA. ORS 30.265(2). The OTCA provides that if the action alleges damages in an amount equal to or less that the damages allowed under the OTCA, "the *sole* cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or ORS 30.287 *is an action against the public body.*" ORS 30.265(3)(emphasis added). Therefore, when an action is filed against an officer, employee, or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under the OTCA, "the court upon motion *shall* substitute the public body as the defendant." ORS 30.265(3) (emphasis added).

The damages caps for personal injury claims against state entities under the OTCA are provided in ORS 30.271. For causes of action arising on or after July 1, 2015, the damages caps are set by the State Court Administrator. ORS 30.271(4). For causes of action arising on or after July 1, 2016 and before July 1, 2017, the damages cap

for a single claimant is $2,073,600.[11]

Plaintiff's Complaint alleges entitlement to the following types of damages:

- Economic damages in the form of lost wages and benefits, consequential damages and prejudgment interest in an amount to be determined at trial;

- Compensatory damages in an amount to be determined at trial;

- Equitable relief and damages in amounts to be determined at trial;

- Punitive damages; and

- Reasonable attorneys' fees and costs.

Plaintiff has not alleged any specific amount of damages and clearly has not alleged an amount in excess of $2,073,600. Accordingly, the University must be substituted for the individual defendants, and the claims against Defendants Cantwell and Gutierrez arising under state law must be dismissed.

**D.    Plaintiff's whistleblowing claim under ORS 659A.199 must be dismissed because ORS 659A.203 provides the exclusive basis for a whistleblowing claim against a public employer.**

Defendants move to dismiss Plaintiff's whistleblowing claim brought under ORS 659A.199 in its entirety based on its inapplicability to public employers. Oregon law provides several different statutes relating to whistleblowing activity. ORS 659A.203 forbids any "public or nonprofit employer" from "[p]rohibit[ing] any employee from disclosing, or tak[ing] or threaten[ing] to take disciplinary action against

---

[11] A court "may judicially notice a fact that is not subject to reasonable dispute because it: * * * (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 (b)(2).  The court "may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c). Defendants request that the Court take judicial notice of the effective limits published the State Court Administrator at http://www.courts.oregon.gov/Documents/Table_of_Liability_Limits.pdf.

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

an employee for the disclosure of any information that the employee reasonably believes is evidence of," among other things, "[a] violation of any federal or state law" or "[m]ismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision." ORS 659A.203 also prohibits public and nonprofit employers from attempts to "[d]iscourage, restrain, dissuade, coerce, prevent or otherwise interfere with disclosure or discussions described in this section."

ORS 659A.199 provides that it is "an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

Plaintiff in this case has brought claims under *both* whistleblowing statutes, ORS 659A.199 and ORS 659A.203. While Defendants do not concede the merits of the claim, they do concede that ORS 659A.203 provides the proper and *exclusive* basis for alleged whistleblowing claims against a public employer like the University of Oregon.

In *Lindsey v. Clatskanie People's Utility District*, 140 F.Supp.3d 1077 (D. Or. 2015), the Court found that the legislative history establishes that ORS 659A.199 was specifically enacted to apply to *private* employers and thus concluded that it did *not* apply to a public employer. In *Lindsey*, the plaintiff brought claims against his public employer, the Clatskanie People's Utility District, under both ORS 659A.203 and ORS

659A.199. The Court agreed with other District of Oregon opinions finding the ORS

659A.199 was intended to apply to *private* employers:

> The legislative history of ORS 659A.199 evinces the legislature's intent to make whistleblower protections available in the private sector. When Representative Judy Steigler introduced the bill that would become ORS 659A.199 to the Oregon House of Representatives, she explained:

> Essentially, what House Bill 3162 accomplishes is putting private employees on equal footing with public employees at this stage of the game who already have a whistle-blowing provision in ORS 659A.... [M]y main motivation here was to provide the private employee who was trying to do the right thing the same rights and remedies that are available to our public employees.

> *Hearing on H.R. Bill 3162A before the H. Comm. on Business and Labor,* 75th Legis. Assemb. (Or.2009) (statement of Rep. Judy Steigler). When presenting the bill to the Oregon Senate Committee on Commerce *1095 and Workplace Development, Representative Steigler similarly stated: "So what this proposes to do—it's really quite a simply bill.... All this basically does is ... bring private employees more in line with the remedies available to them—would be available to them as public employees." *Hearing on H.R. Bill 3162A before the S. Comm. on Commerce and Workforce Development,* 75th Legis. Assemb. (Or.2009) (statement of Rep. Judy Steigler).

140 F.Supp.3d, 1077, 1094-1095. The Court found that "[t]he legislative history

establishes that ORS 659A.199 does not apply to public employers" and therefore, the

claim brought against the public utility company was improper. 140 F.Supp.3d, 1077,

1095.

      Allowing a plaintiff to bring a claim against a public employer under ORS

659A.199 instead of ORS 659A.203 essentially renders the more demanding standards

required of the public whistleblowing statute useless.  The standards necessary to meet

the level of whistleblowing are remarkably different, and more demanding. Indeed, "the

legislature intended that the 'threshold' for the generality of public employee

whistleblower claims be different, and more demanding…" *Love v. Polk County Fire Dist.*, 209 Or. App. 474 (2006). It would eviscerate the intent of having a distinct and higher standard for public employees to meet the standard of whistleblowing if a public employee could simply bring a claim under ORS 659A.199 instead. This Court has recently found this argument persuasive in several unpublished decisions dismissing plaintiffs' ORS 659A.199 claims against their public employers. "The Court concluded that the Oregon Legislature did not intend section 659A.199 to apply to public employers, reasoning that '[i]t would…make little sense to subject a public employer to competing requirements by allowing a plaintiff to bring claims under both' provisions." *Nichol v. City of Springfield*, No. 6:14-CV-01983-AA, 2016 WL 3512071, at *4 (D. Or. June 27, 2016), following the court's conclusion in *Minger v. Hood Community College District*, No. 3:14-CV-01460-SI, 2016 WL 475382, at *6-7 (D. Or. Feb. 4, 2016). Defendants therefore move the Court to dismiss Plaintiff's claim under ORS 659A.199 as inapplicable to a claim against the University of Oregon as a public employer.[12]

## CONCLUSION

For the reasons discussed in this motion, Defendants request the Court dismiss Plaintiff's claims brought under Title VII in their entirety [Fourth Claim for Relief (Count 2)]; Plaintiff's claims brought under 42 U.S.C. §§ 1983 and 1981 against

---

[12] The applicability of whether ORS 659A.199 applies to public employers has not been decided by Oregon appellate courts. The question of "[w]hether public employers can be sued under ORS 659A.199" was certified to the Oregon Supreme Court in *Leonard Williamson v. Department of Corrections*, Oregon Supreme Court Case No. S064696, accepting the certified question from the United States District Court for the District of Oregon, Case No. 6:16-cv-00783-MC. That case was settled before the Oregon Supreme Court issued an opinion on the matter, leaving it an open question in Oregon appellate courts.

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Defendants Cantwell and Gutierrez in their entirety [First, Second and Third Claims for Relief]; Plaintiff's claims brought under Oregon state law against Defendants Cantwell and Gutierrez only [Fourth Claim for Relief (Count 1), Fifth Claim for Relief (Counts 1, 2 and 3)]; and Plaintiff's Whistleblowing claim brought under the private employer whistleblowing statute ORS 659A.199 in its entirety [Fifth Claim for Relief (Count 3)].

The claims that Defendants are not moving against are:

- Fourth Claim for Relief (Count 1) – Race Discrimination (ORS 659A.030) against Defendant University of Oregon

- Fifth Claim for Relief Retaliation/Whistleblowing (Count 1) – Retaliation (ORS 659A.030(f)) against Defendant University of Oregon

- Fifth Claim for Relief Retaliation/Whistleblowing (Count 2) – Whistleblowing (ORS 659A.203) against Defendant University of Oregon

DATED:  March 30, 2017.

BULLARD LAW

By s/Liani J. Reeves
    Liani J. Reeves, OSB No. 013904
    lreeves@bullardlaw.com
    Kalia Walker, OSB No. 154434
    kwalker@bullardlaw.com
    503-248-1134/Telephone
    503-224-8851/Facsimile
    Attorneys for Defendant
    University of Oregon

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2018 I served the foregoing

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM**

**OF LAW** on:

> Beth Creighton
> Creighton & Rose, PC
> Powers Building, Suite 300
> 65 SW Yamhill Street
> Portland, OR  97204

☑ by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

☑ by **mailing** a true and correct copy to the last known address of each person listed.  It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the U.S. Postal Service in Portland, Oregon.

☐ by causing a true and correct copy to be **hand-delivered** to the last known address of each person listed.  It was contained in a sealed envelope and addressed as stated above.

☐ by causing a true and correct copy to be delivered **via overnight courier** to the last known address of each person listed.  It was contained in a sealed envelope, with courier fees paid, and addressed as stated above.

☐ by **faxing** a true and correct copy to the last known facsimile number of each person listed, with confirmation of delivery.  It was addressed as stated above.

☐ by **emailing** a true and correct copy to the last known email address of each person listed, with confirmation of delivery.

s/Liani J. Reeves
Liani J. Reeves, OSB No. 013904
Attorneys for Defendant
University of Oregon