IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DYLAN BLANKS,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF OREGON, LORETTA CANTWELL[1] and LEANN GUTIERREZ, in their individual capacities and their official capacities,<br><br>    Defendant. | Case No. 6:17-cv-01578-AA<br>**OPINION AND ORDER** |

AIKEN, District Judge:

In this Motion to Dismiss (doc. 14), defendants University of Oregon ("UO"), Lorretta Cantwell ("Cantwell"), and LeAnn Gutierrez ("Gutierrez") seek to dismiss some of plaintiff Dylan Blanks' ("Blanks") claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted respectively. For the reasons set forth below, defendant's motion is granted in part and denied in part.

///

///

---

[1] Defendants note in their briefing that Ms. Cantwell's first name is misspelled. In truth, it is spelled Lorretta.

1 – OPINION AND ORDER

## BACKGROUND

Plaintiff began working as a registered nurse for UO, starting in April 2007. Defendant Cantwell has served as the Director of Nursing for UO's Health Center ("UHC") since September 2015. Defendant Gutierrez has served as the Director of the UHC since 2016.

The UHC's mission is to "provide exceptional culturally competent health services and public health leadership that enhances the personal success and optimizes health and wellness for a diverse campus community." Compl. ¶ 7. UHC is required to comply with all state and federal laws governing the health care industry.

Part of plaintiff's responsibilities as a registered nurse required her to monitor the Digital Data Loggers ("DDL") for the vaccine refrigerators to ensure compliance with Center for Disease Control ("CDC") and Vaccine for Children ("VFC"). In October 2016, the temperature range for the stored flu vaccinations went out of compliance during an off-site clinic. Plaintiff brought this to Cantwell's attention. This issue happened again later that same month for a separate clinic. Plaintiff reported this issue to the clinic's Medical Director, Dr. Brunander, and alleges that Cantwell falsified a report related to this incident. Plaintiff filed a complaint against Cantwell to the Oregon Board of Nursing in January 2017 with respect to the falsifying of that report.

Plaintiff also alleges that Cantwell engaged in conduct creating a hostile work environment for plaintiff after she filed the complaint with the Board. Cantwell's alleged conduct included: micromanagement; monitoring phone calls; addressing plaintiff in a rude manner; responding to plaintiff in a "cold, accusatory, and suspicious manner;" gradually taking away plaintiff's responsibilities and decision-making authority; transferring her duties to subordinate nurses; putting added expectations on her; questioning all of plaintiff's decisions;

trying to find fault in plaintiff's performance; subjecting plaintiff to heightened expectations; and "disparately disciplining her[.]" *Id.* at ¶ 41.

Plaintiff also alleges that she was subjected to a racially hostile environment caused by Cantwell. This alleged hostile behavior included: having scheduled meetings every day to show that none of the refrigerators were out of compliance, which were held in an "exaggerated and demeaning way," *Id.* at ¶ 19; being rude and dismissive whenever plaintiff asked a question; and failing to directly address plaintiff when she attempted to confront Cantwell about these issues.

In the fall of 2016, plaintiff filed a complaint with the UO's Affirmative Action and Equal Opportunity ("AAEO") Office, alleging that Cantwell subjected her to disparate treatment and a hostile work environment based on race. In June 2017, after conducting an investigation, the AAEO found that Cantwell had treated plaintiff "differently than others in a number of ways, and that race was more likely than not at least a factor" and that the conduct had "created an intimidating and hostile working environment[.]" *Id.* at 49.

Following the investigation, plaintiff alleges the hostility and harassment increased. Cantwell now provided plaintiff with a document of "expectations" that included a threat of termination if the expectations were not met. *Id.* at ¶ 35. Plaintiff later complained to Gutierrez about Cantwell's behavior. Plaintiff was put on administrative leave while an investigation was initiated with respect to these accusations. Cantwell allegedly told plaintiff's coworkers that she was put on administrative leave because she "played the race card[.]" *Id.* at ¶ 40. On October 5, 2017, plaintiff filed the present complaint before this Court, where she alleges claims involving protected speech, race discrimination, retaliation for engaging in speech related to the handling of vaccines, and retaliation for reporting Cantwell's alleged discriminatory conduct. Defendants now move to dismiss some of plaintiff's claims pursuant Fed. R Civ. 12(b)(1) and 12(b)(6).

3 – OPINION AND ORDER

Specifically, defendants move to dismiss plaintiffs' claims for protected speech retaliation, race discrimination pursuant to 42 U.S.C. §§ 1983, 1981, and Or. Rev. Stat. § 695A.030, retaliation pursuant to Or. Rev. Stat. § 659A.030(f), and whistleblowing retaliation pursuant to Or. Rev. Stat. § 659A.203 against defendants Cantwell and Guitierrez. Defendant's also seek to dismiss plaintiff's claims for race discrimination pursuant to 42 U.S.C. § 2000e-2 and whistleblowing retaliation pursuant to Or. Rev. Stat. § 659A.199 against defendants Cantwell, Guiterriez, and University of Oregon.

## STANDARDS

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the court's subject matter jurisdiction. Federal courts have limited jurisdiction and are presumed to lack subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The burden is on the plaintiff to prove that the court has subject matter jurisdiction. *Id.* A challenge to the subject matter jurisdiction of a court may either be facial or factual. *White. v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint and allows dismissal to the extent the pleading fails to state a claim upon which relief can be granted. Under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if assumed to be true, "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the factual allegations in the complaint allow a court to reasonably infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff." *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013). The factual allegations in the complaint must present more than "the

mere possibility of misconduct," *id.* at 679, and more than a "formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555.

## DISCUSSION

I.   *Title VII Claims*

Initially, defendants move to dismiss plaintiff's fourth claim for relief pursuant to 42 U.S.C. § 2000e-2 against all defendants. For a court to have subject matter jurisdiction over a this claim, the plaintiff must exhaust all administrative remedies by filing a timely administrative charge with the Equal Opportunity Employment Commission ("EEOC"), or appropriate state agency, to afford the agency an opportunity to investigate the claims. 42 U.S.C. § 2000e-5(e)(1). Plaintiff has provided no evidence of filing an administrative complaint with the EEOC or any state agency. Accordingly, plaintiff's fourth claim for relief pursuant to § 2000e-2 is dismissed as to all defendants.

II.  *Qualified Immunity of Cantwell and Gutierrez*

Defendants argue that Cantwell and Gutierrez have qualified immunity against plaintiff's claims under 42 U.S.C. §§ 1981 and 1983. Qualified immunity is a doctrine established to bar suits against public officers for their constitutional violations. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). An individual is entitled to qualified immunity unless plaintiff can show "(1) the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011). The purpose of qualified immunity is meant to allow public officers to make decisions and perform their public duties without having constant fear of facing potential lawsuits. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Defendants argue that Cantwell and Gutierrez are entitled to qualified immunity on the basis that plaintiff is unable to show that a right was "clearly established" under any of her claims. To determine when a right was "clearly established," the relevant inquiry is "whether it would be clear to a reasonable officer his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201. Whether or not the alleged conduct actually violated a constitutional right is irrelevant to the analysis. *Anderson*, at 639. For the reasons set forth below, defendants entitled to qualified immunity for some of defendants claims under 42 U.S.C. §§ 1981 and 1983. I address each claim in turn.

   A.   *Plaintiff's First Amendment Claim*

Plaintiff claims her First Amendment rights under 42 U.S.C. § 1983 were violated when Cantwell and Gutierrez retaliated and discriminated against her after she "exercised her free speech to object to unsafe and unlawful storage and handling of vaccines used to inoculate the public." Compl. ¶ 57. Defendant moves to dismiss this claim, arguing that the speech in question is not protected under the First Amendment and that Cantwell and Gutierrez are entitled to qualified immunity.

The Ninth Circuit has outlined a five-step test to establish a claim for speech retaliation by a public employer. The five prongs are that: (1) a plaintiff must first show she spoke on a matter of public concern; (2) plaintiff must also show she spoke as a private citizen, not as a public employee; (3) and plaintiff must show that the relevant speech was a substantial or motivating factor in the adverse employment action; (4) if plaintiff meets the first three steps, defendant must show adequate justification for treating plaintiff differently from other members of the general public; (5) or defendant must show that the same adverse action would be taken absent the protected speech. *Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 822 (9th Cir. 2017).

Plaintiff has the burden of production for the first three steps and then the burden shifts to the defendant for the last two. *Id.*

Plaintiff argues that the proper handling of vaccines is a public health concern. Speech is a matter of public concern when it can be said to involve any matter of political, social, or other concern to the community. *Huppurt v. City of Pittsburg*, 574 F.3d 696 (9th Cir. 2009). The Ninth Circuit has held that speech involving the ability of a hospital to adequately care for patients was a matter of public concern. *See Ulrich v. City & County of San Francisco*, 308 F.3d 968, 978 (9th Cir. 2002) (holding that the physician's statements criticizing layoffs of other physicians was a matter of public concern because it influenced the ability of the hospital to adequately care for the patients). I find that the handling of vaccines, which will inevitably be used throughout the community, is indeed a concern to the community.

Next, in determining whether plaintiff spoke as a private citizen or public employee, I must: (1) make a factual determination of plaintiff's job responsibilities and (2) resolve whether plaintiff's speech was made pursuant to her job duties. *Kennedy*, 869 F.3d at 823-824. This inquiry should not just look at the job description but what the employee actually does. *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). Defendants argue that plaintiff was required to report the falsification of temperature records pursuant to her job duties. Plaintiff argues she was obligated to report the falsification of temperature records by Or. Rev. Stat. § 678.135, and this duty is independent from her employment with UO. However, plaintiff provides this Court no reason to treat her job responsibilities and statutory obligations separately under this step of the analysis. As a registered nurse, she had an obligation to report this kind of misconduct, but more importantly that obligation was directly within the scope of her employment with UO. Thus plaintiff does not meet her burden under step two, and this claim is dismissed. Alternatively,

7 – OPINION AND ORDER

defendants Cantwell and Gutierrez are entitled to qualified immunity as the allegedly violated right was not clearly established at the time of the challenged conduct.

B.  *Plaintiff's Racial Discrimination Claim*

Under her race discrimination claim brought under 42 U.S.C. § 1983, plaintiff argues that she was subject to disparate treatment by defendants and faced adverse employment action, affecting the terms and conditions of her employment. Defendants argue that Cantwell and Gutierrez entitled to qualified immunity.

Under Title VII of the Civil Rights Act, it is an unlawful practice for an employer to discriminate on the basis of race against anyone with respect to compensation, terms, conditions, or privileges or employment. 42 U.S.C. § 2000e-2(a)(1). To prevail on this claim, plaintiff must establish a prima facie case of intentional race discrimination which requires that (1) plaintiff is a member of a protected class; (2) she is qualified for her position and performing her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably or there is an inference of discrimination based on the adverse employment action. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151 (9th Cir. 2010).

Plaintiff, being African-American and having been a certified registered nurse working for UO since 2007, meets the first two elements of a prima facie case. Turning to the third element, to show adverse employment action, a plaintiff must show that a defendant materially impacted her compensation, workplace conditions, or privileges of employment. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Plaintiff cites many examples of what she alleges to be adverse employment action: she was put on administrative leave while the investigation occurred; coworkers were told plaintiff

played the "race card" while on leave, Compl ¶ 40; Cantwell excluded plaintiff from meetings, took away her responsibilities, micro-managed her actions, addressed her in a "rude/curt" manner, *Id.* at ¶ 41; she dismissed plaintiff's concerns for handling vaccines, subjected plaintiff to "unwarranted disciplinary action[,]" she also presented plaintiff with additional expectations that were accompanied with an implied threat of termination, *Id.* at ¶ 34, 35, 40; Cantwell harassed plaintiff, and subjected her to regular one-on-one meetings, which encompassed "special reviews[,]" *Id.* at ¶ 34. For the purposes of this motion, I find that the exclusion from meetings and added job scrutiny, as alleged in the complaint, materially impacted plaintiff's workplace conditions. Further, these additional expectations and removed responsibilities materially impacted plaintiff's privileges of employment. *See Chew v. City & Cty. Of San Francisco,* 714 Fed. Appx. 687, 691 (9th Cir. 2017).

I note that neither party addresses the fourth step of stating a Title VII claim, that similarly situated individuals outside of her protected class were treated more favorably or that there is an inference of discrimination based on the adverse employment action. However, at this stage of the proceedings in discrimination cases, "[r]ather than adduce a *prima facie* claim in the complaint itself—before discovery, often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action, has taken place—a plaintiff need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1061 (9th Cir. 2004) (internal citations omitted). Accordingly, this claim survives the motion to dismiss. Construing the facts alleged in plaintiff's favor, Cantwell and Gutierrez are not entitled to qualified immunity on this claim based on the present motion as they violated plaintiff's clearly established right to be free of adverse employment actions on the basis of race.

C.  *Plaintiff's Hostile Work Environment Claim*

Defendants argue that Cantwell and Gutierrez are entitled to qualified immunity as to plaintiff's hostile work environment claim under 42 U.S.C. § 1981. Defendants reason that no controlling case law establishes that the actions of Cantwell and Gutierrez, individually or taken together, are sufficiently severe or pervasive enough to support a hostile work environment claim.

Courts use a "totality of the circumstances test" to determine whether a hostile work environment existed. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). To establish a *prima facie* case for a hostile work environment claim, a plaintiff must show: (1) she was subjected to verbal or physical conduct because she is African-American; (2) the conduct was unwelcome; and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of her employment[.]" *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

Conduct is "sufficiently pervasive" if "the work environment was both subjectively and objectively hostile." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004). Courts analyze the factors from the perspective of a "reasonable person of the same . . . race." *Id.* at 1115-1116. In determining whether a work environment is "objectively hostile," courts look at the "frequency of discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance[.]" *Harris v. Forklift Sys.*, 510 U.S. 17 (1993).

In her complaint, plaintiff notes thirteen specific actions taken by Cantwell that are alleged to have created a hostile work environment: monitoring plaintiff's phone calls; addressing plaintiff is a rude manner; micro-managing plaintiff's actions; gradually taking away

10 -- OPINION AND ORDER

plaintiff's responsibilities; responding to plaintiff in a "cold, accusatory, and suspicious manner[;]" looking for fault with plaintiff's performance; adding expectations, questioning plaintiff's decisions; interfering with her job; taking away her "decision-making job duties . . . disparately disciplining her[;]" subjecting her to "heightened and disparate expectations[;]" and "transferring her lead duties and responsibilities to her RN1 subordinate nurses[.]" Compl. ¶ 41.

In June 2017, UO conducted an internal investigation regarding plaintiff's complaint. It found "by a preponderance of evidence Ms. Cantwell treated [Blanks] differently than others in a number of ways, and that race was more likely than not at least a factor in her treatment of [Blanks]." *Id.* at ¶ 49. This is sufficient to support the first element of a *prima facie* case because plaintiff was subjected to conduct, at least in part, based on her race. Plaintiff is also able to demonstrate that the conduct was unwelcome as evidenced by her complaints with the UO's AAEO and the Board of Nursing.

To determine whether defendant's conduct was sufficiently severe or pervasive, defendant's conduct must be objectively and subjectively hostile. *McGinest*, at 1103. Plaintiff repeatedly notes the consistency of defendant's conduct, namely that while many of her responsibilities were taken away, the scrutiny she was put under intensified. Construing the pleadings in her favor, this is sufficient to show that the harm was frequent, severe, and interfered with her work performance. Plaintiff's experience was subjectively hostile as well, evinced by her frequent complaints. Plaintiff is able to establish a *prima facie* case of a hostile work environment claim and that her rights were clearly established; thus, Cantwell and Gutierrez are not entitled to qualified immunity on this claim.

///

///

11 – OPINION AND ORDER

III. *Plaintiff's Oregon State Law Claims*

Plaintiff brings several claims under Oregon state law: Or. Rev. Stat. §§ 659A.030 (race discrimination); 659A.030(f) (retaliation); 659A.203 (public whistleblowing); and 659A.199 (whistleblowing). Defendants argue that the UO should be the sole defendant of these claims and that they should be dismissed against Cantwell and Gutierrez based on the Oregon Tort Claims Act ("OTCA"), which can indemnify individual defendants. The OTCA, Or. Rev. Stat. §§ 30.260-.300, limits the amount of damages a plaintiff can recover for the torts of officers, employees or agents of a public body.

The OTCA provides that "the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action against the public body" as long as the action alleges damages in an amount is less than or equal to the damages allowed under the OTCA. Or. Rev. Stat. § 30.265(3). Therefore, "[i]f an action is filed against an officer, employee or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the court upon motion shall substitute the public body as the defendant." *Id.* "If an action under ORS 30.260 to 30.300 alleges damages in an amount greater than the damages allowed under ORS 30.271, 30.272 or 30.273, the action may be brought and maintained against an officer, employee or agent of a public body, whether or not the public body is also named as a defendant." *Id.* at § 30.265(4).

The parties do not dispute Cantwell and Gutierrez were acting within the scope of their employment and are eligible for representation and indemnification under Or. Rev. Stat. §§ 30.285 or 30.287. The real dispute here is whether plaintiff has alleged damages in excess of the

12 – OPINION AND ORDER

cap imposed by the OTCA. Plaintiff does not plead specific amount of damages for these claims. Instead, plaintiff argues that it may be inferred that the complaint is seeking damages in excess of the damage cap since a complaint is to be construed in favor of the plaintiff under Fed. R. Civ. P. 12(b)(6) and because the amount of damages is typically not required to be pled in federal court.

Plaintiff would have this Court apply these provisions of the OTCA contingent on the amount of damages awarded in a jury verdict. I disagree with this application of the OTCA. Other courts have taken a similar approach. *See Lovelady v. Beamer*, 2017 WL 4707509, at *6 (D. Or. Oct. 19, 2017) (claims against an individual defendant acting within the course and scope of his employment and alleging damages less than what is allowed under OTCA were dismissed, leaving the public body as the only defendant); *see also Perez v. Peters*, 2017 WL 7734093, at *8–9 (D. Or. Aug. 7, 2017) (dismissing claims against individual defendants and substituting the state agency because the individual defendants acted within the scope of their employment and plaintiff did not ask for damages in excess of what is allowed under the OTCA). Therefore, under the OTCA, the only appropriate defendant in connection with plaintiff's Oregon state law claims is the public body by which Cantwell and Gutierrez were at all material times employed. Therefore, the claims brought under these statutes against Cantwell and Gutierrez are dismissed. Plaintiff may proceed with these claims against UO.

IV.     *Or. Rev. Stat. § 659A.199*

Plaintiff brings claims under both Or. Rev. Stat. § 659A.203 and Or. Rev. Stat. § 659A.199 against defendants for retaliation against her whistleblowing when "she opposed unlawful employment practices and disclosed information that she reasonably believed was evidence of a violation of state and federal law, and/or abuse of authority, and a substantial and

13 – OPINION AND ORDER

specific danger to public health[.]" Compl. ¶ 96. The parties dispute whether section 659A.199 applies to public employers.

Section 659A.203 makes it an unlawful practice for "any public employer" to "[p]rohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of . . . [a] violation of any federal, state, or local law, . . . [m]ismanagement, . . . or abuse of authority[.]" Or. Rev. Stat. § 659A.203(1)(b)(A)–(B). In contrast, section 659A.199 does not specify whether it governs public or private employers. It provides that "an employer" may not "retaliate against an employee . . . for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." *Id.* § 659A.199(1). Unlike section 659A.203, section 659A.199 does not explicitly state what type of employers it applies to.

Courts in this district have previously held that Or. Rev. Stat. § 659A.203 applies to public employers while Or. Rev. Stat. § 659A.199 applies to only private employers. Indeed, I have previously addressed this precise question, reviewing legislative history and interpreting the provisions at issue. *See Minger v. Hood Community College District*, 2016 WL 475382 (D. Or. 2016). There, I concluded that the Oregon Legislature did not intend section 659A.199 to apply to public employers, reasoning that "[i]t would ... make little sense to subject a public employer to competing requirements by allowing a plaintiff to bring claims under both" provisions. *Id.* at *7. *See also, Lindsey v. Clatskanie People's Utility District*, 140 F. Supp. 3d 1077 (D. Or. 2015) (holding that the legislative history of § 659A.199 showed that the legislature's intent was to provide rights and remedies for private employees). I conclude again that Or. Rev. Stat. § 659A.199 does not apply to public employers. Therefore, plaintiff cannot sustain an action

14 – OPINION AND ORDER

pursuant section 659A.199 because UO is a public employer. Plaintiff's the claim under section 659A.199 is dismissed.

## CONCLUSION

For the reasons set forth herein, defendants' Motion to Dismiss (doc. 14) is GRANTED in part and DENIED in part. Plaintiff's first claim for relief under 42 U.S.C. § 1983, fourth claim for relief (counts 1 and 2 under Or. Rev. Stat. § 659A.030 and Title VII respectively), and fifth claim for relief (counts 1, 2, and 3 under Or. Rev. Stat. §§ 659A.030(f), 659A.203, and 659A.199 respectively) are dismissed against defendants Cantwell and Gutierrez. Plaintiff is allowed to seek leave to amend her complaint within 30 days of this order.

IT IS SO ORDERED.

Dated this 10th day of October 2018.

*/s/ Ann Aiken*
Ann Aiken
United States District Judge